UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| CHRISTOPHER DUBRIEL, | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | Civil No. 08-406-B-W |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| *Commissioner of Social Security* | ) | |

**REPORT AND RECOMMENDED DECISION**[1]

This Supplemental Security Income ("SSI") appeal raises the question of whether substantial evidence supports the commissioner's determination that the plaintiff, who alleges disability stemming from mood and anxiety disorders, was capable of making an adjustment to work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be reversed and the case remanded for further proceedings not inconsistent herewith.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of a mood disorder and an anxiety disorder, Finding 2, Record at 17; that he retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on June 19, 2009, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

following nonexertional limitations: that he could do unskilled work (specific vocational preparation level of 1 or 2), was limited to low-stress work, defined as work involving occasional judgment, decision-making, and changes in work setting, could engage in only occasional, incidental contact with the public, could tolerate a normal degree of supervision, and was capable of occasional interaction with co-workers, Finding 4, *id*. at 18-19; that, considering his age (20 years old on the date his application was filed), education (at least high school), work experience (none), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 5-9, *id*. at 22; and that he, therefore, had not been under a disability at any time since June 9, 2006, the date his application was filed, Finding 10, *id.* at 23. The Appeals Council declined to review the decision, *id*. at 1-3, making it the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain positive evidence in support of the

commissioner's findings regarding the plaintiff's residual work capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff contends that the administrative law judge erred in (i) deeming him capable of occasional, incidental contact with the public and failing to consider his additional mental limitations, (ii) relying on inapposite testimony of a vocational expert in circumstances in which the plaintiff's counsel was thwarted from cross-examining that expert, and (iii) making an unsupported credibility finding. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (Docket No. 10) at 2-11. I recommend that the court find that reversal and remand are required as a result of error in assessing the plaintiff's capacity to interact with the public.

## I.  Discussion

### A.  Mental RFC: Contact With Public

In determining a claimant's RFC, an administrative law judge is not free to substitute her judgment for that of medical or psychological experts and/or to assess RFC on the basis of raw medical evidence. *See, e.g., Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("The ALJ's findings of fact are conclusive when supported by substantial evidence, but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts.") (citations omitted); *Gordils v. Secretary of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) (although an administrative law judge is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," she "is not qualified to assess residual functional capacity based on a bare medical record"). Yet, that is what happened in this case.

The record indicates that the plaintiff had neither held a job, apart from a brief engagement working for his stepfather, or sought any mental health treatment as of the time he

filed his SSI application at age 20.  *See, e.g.*, Record at 34, 44-45, 231.  However, following his filing of that application, he began seeking treatment from a family practitioner, who initially prescribed Lexapro, *see id*. at 255-56, and he was examined and tested by a Disability Determination Services ("DDS") consultant, Mary Alyce Burkhart, Ph.D., *see id*. at 230-34.  Two non-examining DDS experts, Brenda Sawyer, Ph.D., and Thomas Knox, Ph.D., also reviewed his case record and assessed the impact of his mental impairments.  *See id*. at 235-52, 257-74.

All three DDS experts agreed that the plaintiff suffered from social phobia.  *See id*. at 234, 240, 262.  Their conclusion was consistent with the available evidence, which indicated that the plaintiff had displayed difficulty in getting along with others since early childhood, *see, e.g., id*. at 212, 214, 223-24, that his high school went so far as to provide, pursuant to a special education plan, for tutoring one-on-one in a library away from the school grounds, *see, e.g., id*. at 117, and that, per his own testimony and that of his girlfriend's mother, Nancy Waldron, his social difficulties were ongoing, *see, e.g., id*. at 34, 38, 52, 54.  Both Drs. Sawyer and Knox completed mental RFC assessments, finding that the plaintiff could not work with the public.  *See id*. at 251 (finding by Dr. Sawyer that, while the plaintiff had "adequate social skills to interact with co-workers and supervisors[,]" he had "increased anxiety in public places and is not suitable for work with the public or in public and/or crowded areas"), 273 (finding by Dr. Knox that, while the plaintiff could "interact appropriately with small group[s] of coworkers & tolerate normal supervision[,]" he could have "no work with the public due to his MH [mental health] impairment").

The administrative law judge stated that he gave "considerable weight" to the opinion of Dr. Knox, which he found to be well-supported and consistent with the record as a whole.  *See*

*id*. at 22. Yet, he found the plaintiff capable of occasional, incidental interaction with the public. *See* Finding 4, *id*. at 18-19. Whether this was an oversight or a deliberate choice, it was error.[2]

At oral argument, counsel for the commissioner posited that there was no error because there was no conflict. He reasoned that:

1. Incidental contact is not the same thing as working with the public. For example, a park tour guide works with the public, while a park janitor does not, however the janitor nonetheless has incidental contact with such individuals.

2. The record supports a finding that the plaintiff could in fact tolerate such contact, given that he was able, *inter alia*, to walk his dog and briefly enter stores.

While this argument is facially appealing, I decline to embrace it in the absence of any expert testimony indicating that the two findings are consistent or any explanation from the administrative law judge as to (i) what he meant by "occasional, incidental contact" and (ii) how his finding was consistent with that of Dr. Knox. *See Federal Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397 (1974) ("[W]e cannot accept appellate counsel's *post hoc* rationalizations for agency action; for an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself.") (citations and internal quotation marks omitted); *Cagle v. Astrue,* 266 Fed. Appx. 788, 794 (10th Cir. 2008) (rejecting commissioner's "impermissible attempt to provide a *post hoc* rationale in support of the ALJ's decision").[3] Further, as the plaintiff's

---

[2] The administrative law judge never acknowledged that his RFC finding deviated from that of Dr. Knox. *See* Record at 22. However, he did state that he discredited the plaintiff's allegations in large part on the basis of his failure to seek and/or comply with treatment. *See id.* at 19-21. A negative credibility assessment, standing alone, is not a proper basis for an RFC finding. *See, e.g., Rohrberg v. Apfel*, 26 F. Supp.2d 303, 311 (D. Mass. 1998) ("[T]he ALJ, although empowered to make credibility determinations and to resolve conflicting evidence, is not at liberty simply to ignore uncontroverted medical reports. An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.") (citations and internal punctuation omitted).

[3] Although, as counsel for the commissioner noted, the administrative law judge explained that he had credited the plaintiff's complaints of difficulties in dealing with people to the extent that they were consistent with his otherwise *(continued on next page)*

counsel suggested at oral argument, an ability to walk one's dog and shop does not necessarily translate into an ability to work in some kind of contact with the public.  One retains far less control over one's degree of incidental contact with the public at work than one does when walking one's dog or shopping.

The error seemingly is not harmless.  When asked by the plaintiff's counsel whether a frequent inability to tolerate job stresses and a frequent inability to tolerate social interaction with the public or other people in the work space would preclude full-time employment, the vocational expert present at the plaintiff's hearing, Warren Maxim, testified that he believed it would.  *See id.* at 61-62.  In addition, Maxim identified only one specific job that a person with the hypothetical RFC posited by the administrative law judge could perform, that of vehicle cleaner, Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991) ("DOT") § 919.687-014.  *See id*. at 23, 40-41, 62.  While, as counsel for the commissioner pointed out at oral argument, the DOT indicates that no talking or hearing is required for performance of the job, *see* DOT § 919.687-014, it is unclear how much occasional, incidental contact with the public the job entails and whether a person precluded from working with the public because of social phobia could perform it.[4]

On the basis of this point of error, reversal and remand are required.

### B.  Mental RFC: Other Limitations

The plaintiff further faults the administrative law judge for neglecting to incorporate into his mental RFC additional moderate limitations in social functioning and in concentration,

---

functional activities of daily living, *see* Record at 21, the administrative law judge never explained how a limitation to occasional, incidental contact with the public was consistent with Dr. Knox's prohibition against work with the public.

[4] Maxim also testified that a person with the posited restrictions could perform about 25 percent of all unskilled jobs. *See* Record at 40.  However, there is no evidence of record concerning the extent to which that job base would be further eroded by a restriction against any public interaction.  This is fatal at Step 5, at which stage, as noted above, the commissioner bears the burden of proof.

persistence, and pace, noted in Dr. Sawyer's and Dr. Knox's mental RFC forms and Psychiatric Review Technique Form ("PRTF") assessments, and for failing to discuss or give a basis for rejecting Dr. Sawyer's conclusion in her PRTF that the plaintiff suffered from borderline mental functioning. *See* Statement of Errors at 4-8.

The administrative law judge committed no error in omitting to import PRTF findings into his mental RFC assessment. A PRTF is not a mental RFC assessment; instead, it serves a separate purpose. The commissioner prescribes a psychiatric review technique that adjudicators must follow in assessing whether, at Step 1, a claimant has medically determinable mental impairment(s); if so, whether, at Steps 2 and 3, such impairments are severe and meet or equal a so-called Listing (a determination arrived at with the aid of the PRTF); and, if one proceeds to Steps 4 and 5, the degree to which such impairments impact RFC (a so-called mental RFC assessment). *See* 20 C.F.R. §§ 404.1520a, 416.920a; *see also* Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2008) ("SSR 96-8p"), at 147 ("The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria [of a PRTF] are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."); *Furst v. Commissioner of Soc. Sec.,* No. 99-3581, 2000 WL 282909 at *2 (6th Cir. Mar. 13, 2000) ("[T]he ALJ's findings regarding the PRTF are solely relevant to the issues of whether [the plaintiff] had a severe impairment and whether her condition was equivalent to any of the impairments that are listed in Appendix A to the regulations."); *Yoho v. Commissioner of Soc. Sec.,* No. 98-1684, 1998 WL 911719 at *3 (4th Cir. Dec. 31, 1998) (ALJ is not obligated to transfer the findings on the PRTF verbatim to the hypothetical questions asked of a vocational expert).

Nor did the administrative law judge err in omitting to incorporate into his mental RFC finding the portion of Dr. Sawyer's and Dr. Knox's mental RFC forms to which the plaintiff points, namely, checkboxes contained in section I, titled "Summary Conclusions." *Compare* Statement of Errors at 5-6, 8 *with* Record at 249-50, 271-72.  Per the Social Security Administration Program Operation Manual System ("POMS"), a consultant's mental RFC opinion is not set forth in section I, which contains a series of checkboxes intended as a worksheet, but rather in section III, titled "Functional Capacity Assessment." *See* POMS § DI 24510.060(B)(2)(a) & (4)(a) ("Section I is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment. . . .  Section III – Functional Capacity Assessment, is for recording the mental RFC determination.  It is in this section that the actual mental RFC assessment is recorded, explaining the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings.") (boldface omitted).[5]

In any event, to the extent the plaintiff complains that the administrative law judge found him, at Step 2, moderately limited in concentration, persistence, and pace but then failed at Step 4 to incorporate any such limitation into his RFC finding, he is mistaken.  The administrative law judge explained that "Dr. Burkhart indicated that the [plaintiff] was capable of carrying out simple work, and there is no evidence that persuasively contradicts that assessment."  Record at 18.  The administrative law judge went on to find the plaintiff limited to the performance of

---

[5] "[T]he POMS is a policy and procedure manual that employees of the Department of Health & Human Services use in evaluating Social Security claims."  *Davis v. Secretary of Health & Human Servs.,* 867 F.2d 336, 340 (6th Cir. 1989).  While the POMS "does not have the force and effect of law, it is nevertheless persuasive." *Id.*

unskilled, low-stress work, *see* Finding 4, *id*., thereby making allowance for the stated limitations in concentration, persistence, and pace.

The plaintiff raises a separate issue: that Dr. Knox inexplicably failed to incorporate in his section III assessment his section I findings of moderate limitations in various categories, as a result of which his section I finding that the plaintiff could "interact appropriately with [a] small group of coworkers & tolerate normal supervision" was "a complete non-sequit[u]r." Statement of Errors at 6; *see also* Record at 271-73.

I perceive no discrepancy between Dr. Knox's section I and III findings concerning the plaintiff's ability to interact with co-workers. In section I, he checked a box indicating that the plaintiff's ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes was not significantly limited. *See id*. at 272.

There is a seeming discrepancy between Dr. Knox's finding in section I, that the plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors was moderately limited, and his determination in section III that the plaintiff could tolerate normal supervision. *Compare id. with id*. at 273. However, the POMS suggests that section III supersedes, or trumps, section I. *See* POMS § DI 24510.060(B)(2)(a) & (4)(a). In any event, to the extent that the seeming disconnect raises questions about the weight to which Dr. Knox's opinion should have been entitled, at least with respect to this particular limitation, I perceive no reversible error in the circumstances. There is otherwise substantial record evidence in support of the finding that the plaintiff could tolerate normal supervision. Dr. Sawyer so found in section III, and her finding was consistent with her section I indication that the plaintiff was not significantly limited in his ability to accept instructions and respond appropriately to criticism from supervisors. *See* Record at 250-51.

9

To the extent that the plaintiff complains that the administrative law judge failed to supply a rationale for discounting the diagnosis of borderline intellectual functioning, *see* Statement of Errors at 5, his plaint is without merit. The administrative law judge supportably found that the plaintiff had not been medically determined to have borderline intellectual functioning, given Dr. Burkhart's observations that he had put forth very little effort during his WAIS-III testing and that his resultant IQ scores likely understated his intellectual functioning. *See* Record at 17, 232-33.

### C. Vocational Expert Testimony

In his next point of error, the plaintiff complains that the administrative law judge (i) relied on inapposite vocational expert testimony, elicited in response to a flawed hypothetical RFC, (ii) improperly dismissed an affidavit of vocational expert Susan McCarron submitted by the plaintiff post-hearing, and (iii) prevented the plaintiff's counsel from cross-examining Maxim at hearing concerning the impact of additional moderate limitations. *See* Statement of Errors at 8-9.

The plaintiff is correct that the administrative law judge erred in relying on vocational testimony elicited in response to a flawed hypothetical RFC. As noted above, the administrative law judge erroneously found, and conveyed to Maxim, that the plaintiff was capable of occasional, incidental interaction with the public. That mistake, which cannot be discerned to be harmless, undermined the relevance of Maxim's answer and the evidentiary support for the administrative law judge's Step 5 finding. *See, e.g., Arocho v. Secretary of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982) (responses of vocational expert are relevant only to the extent offered in response to hypotheticals that correspond to medical evidence of record; "To guarantee that correspondence, the Administrative Law Judge must both clarify the outputs

(deciding what testimony will be credited and resolving ambiguities), and accurately transmit the clarified output to the expert in the form of assumptions.").

On the other hand, I discern no reversible error in the administrative law judge's handling of the McCarron affidavit or of the plaintiff's counsel's attempts to cross-examine Maxim at hearing.  In both instances, the plaintiff was attempting to elicit vocational testimony as to the impact on the available job base of various moderate limitations noted by Drs. Sawyer and/or Knox in checkboxes contained in section I of the commissioner's mental RFC form.  *See* Statement of Errors at 9; Record at 56-58, 226, 249-50, 271-72.  As noted above, section I does not contain a consultant's actual mental RFC assessment.  Rather, that assessment is contained in section III.

Nor was there any denial of due process, as the plaintiff suggests.  *See* Statement of Errors at 9.  In contrast to the case on which the plaintiff relies, *Lewis v. Barnhart*, No. 06-35-B-W, 2006 WL 3519314, at *4 (D. Me. Dec. 6, 2006) (rec. dec., *aff'd* Dec. 28, 2006), in which the claimant was given no notice of the existence of a significant post-hearing vocational expert report, let alone afforded any opportunity to cross-examine the expert regarding it, in this case, the administrative law judge permitted the plaintiff's counsel to make an offer of proof at hearing that the moderate impairments noted in section I in their totality would cause an inability to sustain competitive employment, *see* Record at 57, and considered the affidavit of McCarron conveying that opinion, *see id*. at 23, 226.

### D.  Credibility Finding

The plaintiff finally complains that the administrative law judge made an unsupportable adverse credibility finding, failing to make any analysis of the credibility of witness Nancy

11

Waldron and erroneously placing great weight on the plaintiff's asserted failure to obtain psychological treatment. *See* Statement of Errors at 10-11.[6]

I discern no basis on which to disturb the credibility finding. *See Frustaglia v. Secretary of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings.").

The plaintiff's first point is not well-taken. The administrative law judge assessed Waldron's credibility. *See* Record at 21-22. As to the second point, the administrative law judge supportably found that the plaintiff had been lax, without good excuse, in seeking mental health treatment and following up on recommended treatment. *See id.* at 19-21, 36-39, 253, 255-56, 275-79. That is a proper basis upon which to discount a claimant's credibility. *See, e.g.*, Social Security Ruling 96-7p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2008) ("SSR 96-7p"), at 140 ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure.").

While it is true, as the plaintiff notes, *see* Statement of Errors at 10, that pursuant to Social Security Ruling 82-59, a failure to obtain treatment cannot be a basis for refusal to grant benefits unless the claimant has been given notice of the issue and an opportunity to obtain the relevant treatment, *see* Social Security Ruling 82-59, reprinted in *West's Social Security*

---

[6] In his statement of errors, the plaintiff also complained that the administrative law judge had neglected to take into account a disability statement from the plaintiff's doctor. *See* Statement of Errors at 10; Record at 280. However, at oral argument, the plaintiff's counsel acknowledged that the statement in question had been taken into consideration.

*Reporting Service* Rulings 1975-1982 ("SSR 82-59"), at 797, that ruling applies only when a claimant has been determined to be disabled *but for* failure to seek prescribed treatment expected to restore his or her ability to work, *see id.* at 793.[7]

In the context of assessing the credibility of the plaintiff's underlying allegations, an administrative law judge is required only to take into consideration any explanations for failure to seek or follow treatment that were offered by the plaintiff or that otherwise appear of record. *See, e.g.*, SSR 96-7p at 140 ("[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment."). The administrative law judge did so in this case, finding uncorroborated, and hence unconvincing, the plaintiff's explanations that he stopped various medications because of adverse side effects and encountered two years' worth of scheduling delays at one mental health facility. *See* Record at 19-21. This assessment of credibility was proper.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for proceedings not inconsistent herewith.

---

[7] The administrative law judge muddied the waters by erroneously citing SSR 82-59. *See* Record at 20. It is clear from a careful reading of the decision as a whole that he did not mean to suggest that he had found the plaintiff disabled but for his failure to pursue prescribed treatment.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 6th day of July, 2009.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge